# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RETAIL EXPERTS CONSULTING AND MANAGEMENT, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 05 C 6337 |
| PREMIUM RETAIL SERVICES, INC., | ) ) ) | Judge Nan R. Nolan |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Retail Experts Consulting and Management, Inc. ("RECM") filed suit against Premium Retail Services, Inc. ("Premium") in the Circuit Court of Lake County, Illinois, seeking injunctive relief, an accounting, and a declaratory judgment arising from Premium's breach of a Merchandising Services Agreement. On November 4, 2005, Premium removed the case to federal court based on diversity jurisdiction. 28 U.S.C. § 1332. Shortly thereafter, Premium answered the complaint and asserted counterclaims for breach of contract, anticipatory repudiation, and declaratory judgment. On December 5, 2005, the parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). On March 29, 2006, Premium moved for summary judgment on all of RECM's claims. While briefing this motion, the parties have proceeded with discovery. Currently before the court is RECM's motion to compel answers to interrogatories and production of documents. For the reasons set forth here, the motion is granted in part and denied in part.

## BACKGROUND

RECM is an Illinois corporation with its principal place of business in Lake County, Illinois, and is owned and operated by Harry Sherman. Premium, a Missouri corporation with its principal place of business in Chesterfield, Missouri, is a professional sales and merchandising services

company that provides nationwide client representation, project management, and retail merchandising services in all classes of trade. (Counterclaim ¶ 1.)

## A. The Contract

On August 23, 2004, the parties entered into a Merchandising Services Agreement (the "Contract") effective for an initial three-year term from July 1, 2004 through June 30, 2007, with an automatic renewal for successive one year terms absent written notice of a party's election to not renew. The Contract stated that Premium would provide, on RECM's behalf, maintenance merchandising and store reset services to OfficeMax retail stores throughout the United States, Puerto Rico, and the U.S. Virgin Islands. Section 15 of the Contract prohibited Premium from soliciting or diverting maintenance merchandising and store reset services of OfficeMax stores, or soliciting or diverting other customers for ongoing services performed in OfficeMax stores "unless released in writing by RECM." (Contract § 15.) Section 16 further provided:

> [D]uring the term of this Agreement, Premium shall refer any independent sales agent similar to RECM wishing to represent Premium in a selling capacity to office superstores, and companies that sell products sold in office superstores, which might seek to contract for merchandising services with Premium within office superstores to RECM to negotiate such contracts on Premium's behalf. Premium hereby agrees during the term of this Agreement not to sign any contracts with office superstores, or with independent sales agents similar to RECM to solicit merchandising services with office superstores without the prior written consent of RECM which RECM, in RECM's sole discretion, may withhold.

(Contract § 16.)

## B. The Alleged Breach

On January 27, 2005, OfficeMax informed RECM that it would no longer utilize RECM's services for maintenance merchandising and store resets. (Cmplt. ¶ 15.) As a result, RECM notified Premium that OfficeMax would no longer be utilizing Premium's services. On March 31, 2005, Premium notified RECM that it deemed the Contract to have terminated no later than February 28, 2005. (*Id.* ¶¶ 16, 17.) According to RECM, Premium then proceeded to breach

2

sections 15 and 16 of the Contract by (1) soliciting merchandising services with independent sales agents and office superstores, and entering into merchandising services contracts, without RECM's prior written consent; and (2) failing to refer those independent sales agents to RECM. (*Id.* ¶¶ 21-27, 46.)

## C.    Premium's Counterclaim

Premium denies any wrongdoing and has asserted a counterclaim alleging that RECM is the one that breached the Contract. Premium claims that in 2000 and 2001, it entered into discussions with an entity named Real Estate and Consulting Management, Ltd. ("RECM LTD") regarding the possibility of Premium providing sales, merchandising, and marketing services to OfficeMax, an RECM LTD customer. RECM LTD is owned and controlled by Marshall Pieczentkowski and has its principal place of business in Des Moines, Iowa. In January 2002, Premium began providing merchandising services to OfficeMax stores throughout the United States, Puerto Rico, and the U.S. Virgin Islands, and on May 8, 2002, Premium entered into a Merchandising Service Agreement ("MSA") with RECM LTD, covering the period January 1, 2002 through February 2004, with automatic one year renewals thereafter. (Counterclaim ¶¶ 3, 4, 7-9.)

On April 1, 2003, Premium and RECM LTD amended the MSA to change the initial term of the agreement to May 8, 2002 through July 31, 2004, with automatic one year renewals thereafter. (*Id.* ¶¶ 10-12.) Premium alleges that prior to the summer of 2004, Harry Sherman owned and operated an entity known as Sherman Media. According to Premium, Sherman formed RECM in the summer of 2004 in order to take over the contract between RECM LTD and OfficeMax, as he had agreed with Pieczentkowski. (*Id.* ¶¶ 14-16.) On August 23, 2004, Premium entered into a new merchandising services agreement – the Contract – with RECM. On February 4, 2005, OfficeMax demanded a meeting with RECM and Premium and told them that RECM's contract with OfficeMax was terminated. (*Id.* ¶¶ 19, 22.)

3

Premium claims that RECM breached the Contract and/or committed an anticipatory repudiation by terminating Premium's services on January 27, 2005, some two and a half years before the initial term of the Contract was set to end on June 30, 2007. Premium also seeks a declaratory judgment that its obligations under the Contract, including any restrictive covenants, were extinguished by (1) the doctrine of impossibility of performance and/or commercial frustration when OfficeMax terminated its underlying agreement with RECM; and/or (2) RECM's prior breach and/or anticipatory repudiation of the Contract.

## DISCUSSION

The Federal Rules of Civil Procedure permit "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir. 2004) (quoting FED. R. CIV. P. 26(b)(1)). RECM challenges Premium's discovery responses regarding several areas of inquiry. The court addresses each in turn.

### 1.    Financial Information

Premium has agreed to supplement its responses to Interrogatory Nos. 9 and 10 and to produce audited financial statements responsive to Document Request No. 71 subject to the entry of a protective order. The parties may properly agree amongst themselves to limit disclosure of unfiled discovery information to certain specified persons during the litigation and not to voluntarily disseminate such information to other persons. Such a confidentiality agreement amongst the parties regarding the categories of the information they seek to protect from dissemination to persons not involved in the lawsuit does not require court approval or intervention. *See Taffinger v. Bethlehem Steel Corp.*, No. Civ. A. 00-4668, 2001 WL 1287625, at *3 (E.D. Pa. Oct. 24, 2001). On May 31, 2006, however, the parties filed a joint motion for an agreed protective order covering

4

the audited financial statements. For the reasons explained in a separate Minute Order, the parties have failed to demonstrate good cause for the protective order but may reassert their motion if and when the parties seek to file Premium's audited financial statements under seal. In light of this ruling, the court denies the motion to compel such financial statements as moot.

## 2. Premium's Interaction with Vendors

In Interrogatory Nos. 2, 4, 7, and 13-16, and Document Request Nos. 16-21, 30-34, 54, 59-61, 63, and 65, RECM seeks detailed information concerning Premium's interaction with "Vendors." The Contract does not define the term "Vendor" but RECM provides the following definition: "all companies that sell their goods or services in any Office Superstore but . . . not . . . limited to companies that sell their goods or services only in Office Superstores." (Definitions and Instructions, Ex. B to Def. Resp., ¶ 19.) RECM further defines "Office Superstore" to mean "all companies that own or operate any off-supply superstore, including, but not limited to OfficeMax, OfficeMax Express, Office Depot, Staples and Staples Express." (Ex. B to Def. Resp. ¶ 18.) Premium argues that section 15 of the Contract applies only to OfficeMax, and objects that section 16 limits Premium's ability to do business with office superstores and independent sales agents similar to RECM, and not "vendors" generally. (Def. Resp., at 4.) Premium also notes that section 2(B) of the Contract expressly permits it to provide services to certain "vendors":

> Premium shall have the right to independently provide other services on behalf of vendors not provided to Premium by RECM so long as such services are not conducted in conjunction with, or piggy-backed onto, RECM scheduled visits.

(Contract ¶ 2(B).)

RECM does not dispute that section 15 is limited to OfficeMax. It notes, however, that section 16 prohibits Premium from "soliciting merchandising services directly from companies that sell products sold in office superstores," and insists that this is consistent with its definition of "vendors." Without interpreting the Contract terms, the court finds that RECM is entitled to

5

information consistent with the express language of the Contract. Thus, Premium must produce responsive information regarding: "companies that sell products sold in office superstores which might seek to contract for merchandising services with Premium within office superstores; office superstores; and independent sales agents similar to RECM." With this limitation, Premium is instructed to answer Interrogatory Nos. 2, 4, 7, and 13-16, and Document Request Nos. 16-21, 30-34, 54, 59-61, 63, and 65. To the extent RECM believes the Contract covered additional vendors, it may present evidence in that regard and, if appropriate, submit supplemental discovery requests on the matter.

### 3. Merchandising Services Within Office Superstores

Premium has agreed to supplement its response to Interrogatory No. 12 regarding its merchandising services within office superstores. The motion to compel this response is therefore denied without prejudice.

### 4. Market for Merchandising Services

On May 18, 2006, Premium supplemented its response to Document Request Nos. 49 and 50 with three documents distributed by the National Association for Retail Marketing Services. RECM "believes that a more diligent search by Premium will yield responsive documents." (Pl. Reply, at 2.) The court has no reason to doubt Premium's representation that it has no additional documents responsive to these requests. RECM's motion to compel is denied, but the court reminds the parties of their duty to "act in good faith in complying with their discovery obligations and to cooperate with and facilitate forthright discovery." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 342 (N.D. Ill. 2005) (citing *Johnson v. J.B. Hunt Transport, Inc.*, 280 F.3d 1125, 1132 (7th Cir. 2002)). This includes a continuing duty to supplement or correct responses to document requests. FED. R. CIV. P. 26(e)(2); *Allen v. Bake-Line Prods., Inc.*, No. 98 C 1119, 2001 WL 883693, at *1 (N.D. Ill. Aug. 6, 2001). *See also International Ins. Co. v. Caja Nacional De Ahoroo*

*Y Seguro*, No. 00 C 6703, 2004 WL 555618, at *1 (N.D. Ill. Mar. 18, 2004) (noting plaintiff's award of sanctions where defendant "refus[ed] to respond in good faith with the requested discovery material.")

### 5. Customer Solicitation Lists

Document Request Nos. 51 and 52 ask Premium to produce documents sufficient to identify all "persons" that Premium "provided any good[s] or services" and "solicited for purposes of providing any goods and services" from July 1, 2004 to the present. Premium objects that these requests are overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because "they are not limited in scope to those classes of 'persons' that even arguably have anything to do with Premium's contractual agreement with RECM to provide merchandising service to OfficeMax on RECM's behalf." (Def. Resp., at 6.)

As with RECM's requests relating to Premium's interaction with vendors, the term "persons" must be consistent with the express language of the Contract. Without interpreting the Contract terms, the court finds that Premium must respond to Document Request Nos. 51 and 52 with respect to the following: "companies that sell products sold in office superstores which might seek to contract for merchandising services with Premium within office superstores; office superstores; and independent sales agents similar to RECM."

### 6. Officers, Directors, and Shareholders

Premium has agreed to supplement its responses to Document Request Nos. 68 and 69 regarding Premium's officers and directors. The motion to compel responses to these two requests is denied without prejudice. Premium declines to produce documents responsive to Request No. 70 regarding Premium's shareholders, arguing that Premium is a family-owned business and that "[t]he identity of its shareholders are not relevant to any of the parties' claims or defenses in this action, nor is it reasonably calculated to lead to the discovery of admissible evidence." (Def. Resp.,

7

at 7.) Premium fails to explain the basis for this statement and, as RECM notes, Premium may have shareholders that are not officers or directors but that have conducted business on behalf of Premium relating to the allegations in this case. (Pl. Reply, at 3.) Absent a sufficient explanation for its relevancy objection, Premium is instructed to respond to Document Request No. 70.

### 7. Soliciting Office Superstores

Premium states that it has no documents responsive to Document Request No. 28 seeking "expenses that Premium booked in connection with any effort to solicit a contract, agreement or other arrangement of any kind to provide goods or services to any Office Superstore." RECM finds this "unlikely," noting that Premium has identified four employees who have represented Premium in a selling capacity to an office superstore, and that Premium has admitted to soliciting OfficeMax, Office Depot, and Staples. (Pl. Mem., at 8; Pl. Reply, at 3.) RECM "believes that a more diligent search by Premium will yield responsive documents." (Pl. Reply, at 3.)

The court again has no reason to doubt Premium's representation that it has no documents responsive to Request No. 28 and denies this motion to compel. The parties are again reminded of their duty to respond to discovery requests in good faith and to supplement those responses as appropriate. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 342; *Allen*, 2001 WL 883693, at *1; *International Ins. Co.*, 2004 WL 555618, at *1.

### 8. Contract Financial and Operational Management

RECM has requested documents related to Premium's analysis of historical profit before tax, profit after tax, gross margin, and profit margin with respect to services performed under the Contract from July 1, 2004 to the present. (Document Request Nos. 35-37.) RECM also seeks documents related to Premium's financial budgets, operational budgets, financial forecasts, and operational forecasts for services expected to be performed under the Contract from July 1, 2004

8

to the present. (Document Request Nos. 38-41.) Premium asserted several objections to these requests but stated that, in any event, it has no responsive documents. (Def. Resp., at 8-9.)

RECM again finds this "unlikely," noting Premium's estimate that it earned a net profit of approximately $200,000 under the Contract and reasonably expected to earn revenues of at least $9 million under the Contract. (Pl. Reply, at 3; Pl. Mem., at 9.) If Premium truly has no documents responsive to these requests, RECM argues, Premium must have "no reasonable basis for its representations concerning its historical profit and expected revenues under the Contract." (Id.) RECM also insists that the request seeks more than just documents "related to the Contract," and includes budgets and forecasts related to "any services performed under the Contract." (Id. at 3-4.)

The court agrees that Premium should produce documents supporting its estimate of net profits and expected revenues under the Contract. To the extent no such documents exist, the burden on Premium to explain the basis for its calculations will be a heavy one. That said, Document Request Nos. 35-41 do not exactly request such information. The motion to compel is denied without prejudice to RECM submitting additional document requests on these limited issues.

### 9. Nature of the Relationship Between Premium and RECM

In Document Request Nos. 42-48, RECM seeks documents related to instances in which Premium stated or represented, from July 1, 2004 to the present, that (1) Premium was or is in a joint venture or partnership with RECM; (2) RECM was or is an agent of Premium; (3) RECM was or is a representative of Premium; (4) RECM is not in a business relationship with Premium; (5) RECM is not in a contractual relationship with Premium; (6) RECM is not an agent of Premium; and (7) RECM is not a representative of Premium. Premium claims that it "may have produced joint proposals that referred to its relationship with RECM, but it did not retain copies of those proposals." Thus, Premium says, it has no documents responsive to these requests. (Def. Resp., at 10.)

RECM notes that in a May 2004 proposal, Premium represented to Earthlink that "RECM and Premium are presenting this proposal in a joint venture to Earthlink." (Sherman Aff. ¶ 1, Doc. 41.) On May 18, 2006, moreover, Premium supplemented its document production with emails dating back to July 2004 that included communications both with and concerning Earthlink. "Based on these emails, RECM believes that a more diligent search by Premium will yield documents responsive to RECM's requests concerning the nature of the relationship between Premium and RECM." (Pl. Reply, at 4.) RECM has not, however, submitted copies of those emails or explained how they relate to Premium's representations regarding the nature of its relationship with RECM. The court denies this motion to compel and again reminds the parties of their duty to respond to discovery requests in good faith, and to supplement those responses as appropriate. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 342; *Allen*, 2001 WL 883693, at *1.

### 10. Alleged Instructions Described in Premium's Counterclaim

In Document Request No. 76, RECM seeks all documents "related to the instructions described in paragraphs 21 or 27 of Premium's counterclaim." In those paragraphs, Premium alleges that on January 27, 2005, Harry Sherman contacted Premium on behalf of RECM and instructed Premium to stop performing under the Contract, which constituted a breach of the Contract. (Counterclaim ¶¶ 21, 27.) Premium insists that it has fully responded to this request by stating that the instructions from Sherman "were given verbally in a telephone conversation." (Def. Resp., at 10.) RECM notes that Brian T. Travers, Premium's President, submitted an affidavit on March 27, 2006 acknowledging that Sherman had advised Travers that Premium should stop providing merchandising services on behalf of OfficeMax, but stating nothing about a telephone conversation. (Travers Aff., Ex. I to Pl. Mem., ¶ 16.) RECM also insists that "communication via telephone does not establish that Premium has no documents related to the alleged instructions,"

and that Premium's response "does not indicate that it searched for responsive documents." (Pl. Reply, at 5.)

The court has no reason to doubt Premium's representation that it has no documents responsive to Request No. 76 and denies RECM's motion to compel. The court trusts that the parties are acting in good faith in responding to discovery requests and that they are supplementing those responses as appropriate. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 342; *Allen*, 2001 WL 883693, at *1.

## CONCLUSION

For the reasons stated above, RECM's motion to compel [Doc. 42] is granted in part and denied in part.

ENTER:

Dated: JUN 1 5 2006

Nan R. Nolan
NAN R. NOLAN
United States Magistrate Judge

11